## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINE CUCINOTTA, for herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>PERSONAL-TOUCH HOME CARE OF N. Y., INC., PERSONAL-TOUCH HOME CARE OF BALTIMORE, INC., ROBERT MARX and FELIX GLAUBACH,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.

**JURY TRIAL DEMANDED**

## COLLECTIVE AND CLASS ACTION COMPLAINT

Christine Cucinotta ("Plaintiff"), by and through her undersigned attorneys, hereby makes the following allegations against Personal-Touch Home Care of N. Y., Inc., Personal-Touch Home Care of Baltimore, Inc., Robert Marx, and Dr. Felix Glaubach (collectively, "Personal-Touch" or "Defendants") concerning her acts and status upon her actual knowledge and concerning all other matters upon information, belief, and the investigation of her counsel:

## NATURE OF THE ACTION

1.     Plaintiff brings this action to redress Defendants' violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* (the "FLSA"), the Maryland Wage and Hour Law, Md. Code Ann., Labor & Employment §§ 3-401, *et seq.* (the "MWHL"), and the Maryland Wage Payment and Collection Law, Md. Code Ann., Labor & Employment §§ 3-501, *et seq.* (the "MWPCL"), by knowingly misclassifying their Registered Nurses, Physical Therapists, Occupational Therapists, Speech Language Pathologists, Medical Social Workers and employees in other similarly-designated skilled care positions ("Clinicians") as overtime exempt and knowingly failing to pay them any overtime premium wages for the hours they worked over forty

in any workweek, despite knowingly paying them under an invalid wage scheme that is plainly inconsistent with their classification as overtime exempt.

2.      Plaintiff brings her FLSA claim on a collective basis pursuant to 29 U.S.C. § 216(b) for all similarly situated individuals who worked as home health Clinicians for Defendants at any point during the maximum limitations period (the "FLSA Collective").

3.      Plaintiff brings her MWHL and MWPCL claims pursuant to the class action provision of Fed. R. Civ. P. 23 and seeks to recover unpaid wages and related penalties and damages for herself and other similarly situated individuals who worked as home health Clinicians for Defendants at any point in the state of Maryland during the applicable statute of limitations period (the "Maryland Class").

## JURISDICTION AND VENUE

4.      This Court has subject-matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), which provides that suits under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

5.      This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6.      This Court has supplemental jurisdiction over Plaintiff's MWHL and MWPCL claims pursuant to 28 U.S.C. § 1367(a) because this claim is so related to the FLSA claims that they form part of the same case or controversy.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because Defendant Personal-Touch Home Care of N. Y., Inc. is incorporated in this District, because Personal-Touch has its primary place of business in this District, because Defendants Robert Marx and Dr. Felix

Glaubach reside in this District, and because a substantial part of the events and omissions giving rise to the claims pleaded in this Complaint occurred within this District.

## THE PARTIES

8.    Plaintiff Christine Cucinotta is a resident of the State of Maryland who resides in Baltimore County, MD.  From March 2013 to September 2017, Plaintiff worked as a full-time Registered Nurse for Defendants, performing home health care services in Maryland.  Defendants misclassified Plaintiff as an exempt employee for purposes of the FLSA and paid Plaintiff on an invalid quasi-salary basis that did not include the payment of all overtime premium wages for work she performed beyond forty hours in any given workweek. As a result, Plaintiff is personally familiar with, and was personally affected by, the policies and practices described in this Complaint.

9.    Plaintiff has consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b).  *See* Consent Form (Exhibit A).

10.    Personal-Touch Home Care of N. Y., Inc. is a New York corporation with its corporate headquarters located in Nassau County, NY.  Defendant Personal-Touch's core business involves the provision of home health care services in at least 7 states, including Maryland. As discussed more fully below, Defendant Personal-Touch is directly responsible for the operation of its home health care business, and for the policies, practices, and conduct at issue in this case.

11.    Defendant Personal-Touch Home Care of Baltimore, Inc. is a Maryland corporation with its principal place of business located at 200 East Joppa Road, Suite 103, Towson, MD.

12.    Personal-Touch Home Care of N. Y., Inc. and Personal-Touch Home Care of Baltimore, Inc. together are a single common "enterprise" as defined by the FLSA, 29 U.S.C. § 203(r)(1), engaged in related activities, under unified operation and common control, with a

3

common business purpose, and with an annual gross volume of sales or business revenue of at least $500,000. Both corporate Defendants have common ownership, engage in common advertising and marketing activities, operate their businesses in a similar if not identical fashion, and hold themselves out to the general public a single unified entity, often under the name "Personal-Touch Home Care."

13.    Defendant Robert Marx ("Marx") is a natural person and the Chairman of the Board of Directors, Executive Vice President/General Counsel, and Co-Founder of Personal-Touch Home Care, and is therefore an officer and agent of the business. At all material times, Marx has operated and controlled Personal-Touch Home Care of N. Y., Inc. and Personal-Touch Home Care of Baltimore, Inc. from corporate offices located in Jamaica, New York in furtherance of a common business purpose: namely, to provide skilled care services to patients in their homes in exchange for payment. Marx holds Personal-Touch Home Care of N. Y., Inc. and Personal-Touch Home Care of Baltimore, Inc. out to the public as a single entity, often under the name "Personal-Touch Home Care."  By way of example only, Marx describes himself as the "Chairman of the Board of Directors, Executive Vice President/General Counsel and Co-founder … of *Personal-Touch Home Care*" (emphasis added).[1]

14.    In his capacity as Chairman of the Board of Directors, Executive Vice President/General Counsel, and Co-Founder, Marx is involved in the day to day business operations of Personal-Touch Home Care of N. Y., Inc. and Personal-Touch Home Care of Baltimore, Inc., exercised financial control over the corporate Defendants, and has the authority to hire and fire Clinicians, including Plaintiff and others similarly-situated, the authority to direct and supervise the work of Clinicians,  the authority to promote, demote and otherwise discipline

---

[1]  https://www.pthomecare.com/boardofdirectors last visited January 3, 2019.

Clinicians, the authority to enter into agreements with Clinicians on behalf of the corporate Defendants, the authority to establish and change the terms and conditions of employment for Clinicians, the authority to sign on corporate checking accounts, including payroll accounts, for the corporate Defendants, and the authority to make decisions regarding wage and hour classifications, compensation (including providing bonuses and raises), timekeeping and other capital expenditures. At all relevant times, Marx acts and has responsibility to act on behalf and in the interests of Personal-Touch Home Care of N. Y., Inc. and Personal-Touch Home Care of Baltimore, Inc. in devising, directing, implementing and supervising the wage and hour practices and policies relating to Clinicians, including those challenged in this action. At all relevant times, Marx has had the specific authority to classify Clinicians as exempt or non-exempt under federal and state wage laws, and to pay or not pay them time and a half their regular rate of pay for time Clinicians work in excess of 40 hours in given workweeks.

15.    Defendant Dr. Felix Glaubach ("Dr. Glaubach") is the Co-Founder, Vice Chairman, and President of Personal-Touch Home Care, and is therefore an officer and agent of the business. At all material times, Dr. Glaubach has operated and controlled Personal-Touch Home Care of N. Y., Inc. and Personal-Touch Home Care of Baltimore, Inc. from corporate offices located in Jamaica, New York in furtherance of a common business purpose: namely, to provide skilled care services to patients in their homes in exchange for payment. Dr. Glaubach holds Personal-Touch Home Care of N. Y., Inc. and Personal-Touch Home Care of Baltimore, Inc. out to the public as a single entity, often under the name "Personal-Touch Home Care." By way of example only, Dr. Glaubach describes himself as the "Co-founder … of *Personal-Touch Home Care*" (emphasis added).[2]

---

[2] https://www.pthomecare.com/boardofdirectors last visited January 3, 2019.

16.     In his capacity as Co-Founder, Vice Chairman, and President, Dr. Glaubach is involved in the day to day business operations of Personal-Touch Home Care of N. Y., Inc. and Personal-Touch Home Care of Baltimore, Inc., exercised financial control over the corporate Defendants, and has the authority to hire and fire Clinicians, including Plaintiff and others similarly-situated, the authority to direct and supervise the work of Clinicians,  the authority to promote, demote and otherwise discipline Clinicians, the authority to enter into agreements with Clinicians on behalf of the corporate Defendants, the authority to establish and change the terms and conditions of employment for Clinicians, the authority to sign on corporate checking accounts, including payroll accounts, for the corporate Defendants, and the authority to make decisions regarding wage and hour classifications, compensation (including providing bonuses and raises), timekeeping  and other capital expenditures. At all relevant times, Dr. Glaubach acts and has responsibility to act on behalf and in the interests of Personal-Touch Home Care of N. Y., Inc. and Personal-Touch Home Care of Baltimore, Inc. in devising, directing, implementing and supervising the wage and hour practices and policies relating to Clinicians, including those challenged in this action.  At all relevant times, Dr. Glaubach has had the specific authority to classify Clinicians as exempt or non-exempt under federal and state wage laws, and to pay or not pay them time and a half their regular rate of pay for time Clinicians work in excess of 40 hours in given workweeks.

17.     The authority, power and control exercised by Marx and Dr. Glaubach extended with the same force and effect to both Personal-Touch Home Care of N. Y., Inc. and Personal-Touch Home Care of Baltimore, Inc., and applied to all Clinicians regardless of geographic location or the corporate entity Defendants designated as the "employer" of Clinicians.

## BACKGROUND FACTS

18.     This action arises out of Defendants' systematic, company-wide wrongful classification of Plaintiff and other similarly-situated home health Clinicians as exempt from the overtime compensation requirements of the FLSA, and the MWHL. The affected employees worked for Defendants as Clinicians whose primary duties involved providing health care services to patients in their homes.

19.     For an employer to properly designate an employee as exempt from statutory overtime compensation requirements, it must affirmatively establish that the employee performs job duties that meet one of the statutorily-defined exemptions and that the employee is paid on either a salary-basis or fee-basis.

20.     Plaintiff's claims are based on Defendants' uniform practice of paying Plaintiff and other Clinicians pursuant to an invalid quasi-salary-based compensation scheme that does not meet either the salary-basis requirement or the fee-basis requirement of the FLSA and MWHL, meaning that Defendants had no valid basis to classify Plaintiff, or any other Clinicians, as overtime exempt and, therefore, wrongly deprived these employees of legally-required overtime wages.

21.     Defendants paid Plaintiff and other Clinicians on an invalid quasi-salary basis for the time they spent providing care and treatment in patients' homes. Under this pay scheme, Plaintiff and other Clinicians were subject to a minimum productivity requirement to perform a designated number of patient visits per week.

22.     Provided Clinicians meet their weekly productivity requirement, under Defendants' pay scheme they would receive the same salary each week, regardless of the duration of each visit. If a Clinician's productivity exceeded their minimum requirement, they would be paid a "per visit" rate for each visit performed in excess of that requirement.

23.     On the other hand, if low patient availability precludes Plaintiff and other Clinicians from meeting their weekly productivity requirement, Defendants penalize Plaintiff and other Clinicians by making deductions from their earned paid time off ("PTO") hours, even though the Clinicians are otherwise available, ready, willing and able to work. Upon information and belief, if Plaintiff or other Clinicians exhaust their available PTO hours, Defendants, under their pay scheme, do not pay Plaintiff or other Clinicians their full salary or otherwise compensate them for the gap in productivity.

24.     Defendants' pay plan violates the salary basis requirement because Plaintiff and other Clinicians do not receive their full salary if they do not meet their productivity quota and exhaust their available PTO hours.

25.     Defendants' pay plan does not accurately account for the time Plaintiff and other Clinicians spend on a wide array of work-related tasks they were required to perform on a regular basis, including: preparing for patient visits; communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with other providers; travelling between patients' homes; documenting information from patient visits ("charting"); or ordering, organizing and retrieving equipment and supplies used during their home visits. Together with client visits, on average Plaintiff and other Clinicians worked well in excess of 40 hours each workweek, but did not receive compensation for all time worked including overtime. Instead, Plaintiff and Clinicians were subject to the invalid quasi-salary-based pay policies and practices described above, regardless of the actual hours each Clinician actually worked.

26.    Defendants routinely suffered and permitted Plaintiff and other Clinicians to spend more than 40 hours in given workweeks performing the various work-related tasks described above.

27.    Defendants did not maintain accurate contemporaneous records of all the hours Plaintiff and other Clinicians worked, and did not require any Clinician, including Plaintiff, to maintain such records.

28.    Defendants knew that Plaintiff and other Clinicians were working more than 40 hours in given workweeks, because they assigned the work they performed; they tracked their performance of this work; and they required all Clinicians to complete extensive paperwork detailing their work and when it was completed (*e.g.* by using the electronic medical record software Allscripts).

29.    Defendants knew or should have known that Plaintiff and other Clinicians should have been classified as non-exempt employees because they were responsible for implementing and managing the compensation system that does not meet any test for exemption under the FLSA or the MWHL.

## FLSA COLLECTIVE ACTION ALLEGATIONS

30.    Plaintiff brings her FLSA claims on a collective basis pursuant to 29 U.S.C. § 216(b) for all individuals who worked as home health Clinicians for Defendants at any point during the maximum limitations period (the "FLSA Collective").

31.    Plaintiff belongs to the FLSA Collective she seeks to represent, because:

a.    She worked as a home health Clinician for Defendants during the relevant period and had similar job duties to the other members of the FLSA Collective;

b.      She received the same training from Defendants and was required to comply with the same wage and hour policies;

c.      Defendants classified her as exempt from the FLSA's overtime compensation requirements;

d.      Her wages were calculated and paid based on Defendants' invalid quasi-salary-based pay scheme;

e.      Defendants routinely suffered and permitted Plaintiff to work more than forty hours per workweek;

f.      Defendants did not maintain accurate contemporaneous records of all the hours Plaintiff worked, and did not require any Clinician, including Plaintiff, to maintain such records;

g.      Defendants knew Plaintiff was working more than 40 hours per week, because they assigned the work she performed, tracked her performance of this work and required her to complete extensive paperwork detailing her work and when it was completed; and

h.      Defendants did not pay Plaintiff for any overtime premium wages for any of the work she performed beyond forty hours in any work week.

32.    Although Plaintiff and the members of the FLSA Collective may have worked in different states or under different managers, this action may be properly maintained as a collective action because, among other things:

a.      Plaintiff and members of the FLSA Collective worked under the same material terms and conditions of employment;

b.      Plaintiff and members of the FLSA Collective were classified as exempt from statutory overtime wage requirements;

c.      Plaintiff and members of the FLSA Collective performed similar job duties and had similar job-related responsibilities;

d.      Plaintiff and members of the FLSA Collective received common training about her employment and the wage and hour policies and practices at issue here;

e.      Plaintiff and members of the FLSA Collective were governed by the same timekeeping policies, practices and systems;

f.      Plaintiff and members of the FLSA Collective were governed by the same compensation policies, practices and systems;

g.      Plaintiff and members of the FLSA Collective were governed by the same policies, practices and systems concerning work hours and the performance of their work; and

h.      Plaintiff and members of the FLSA Collective were governed by the same policies, practices and systems concerning overtime hours and wages.

33.      Plaintiff and the members of the FLSA Collective do not meet any test for exemption under the FLSA.

34.      Plaintiff estimates that the FLSA Collective, including both current and former employees over the relevant period, will include hundreds of members. The precise number of members of the FLSA Collective will be readily available from Defendants' personnel, scheduling, time and payroll records, and from input received from the Collective members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

## CLASS ALLEGATIONS

35.     Plaintiff also seeks to maintain this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b), on behalf of herself and all other similarly situated Clinicians who worked for Defendants in Maryland at any time within the applicable statute of limitations period (the "Maryland Class").

36.     Plaintiff and other similarly situated Clinicians in Maryland all worked under common employment policies, were subject to the same compensation scheme, and were subject to the same practices challenged in this action as described above.

37.     Plaintiff belongs to the Class she seeks to represent because she:

    a.     Worked for Defendants as a Clinician under the same material terms and conditions of employment as the Maryland Class members;

    b.     Performed similar job duties and had similar job-related responsibilities as the Maryland Class members;

    c.     Received the same training about her employment and the wage and hour policies and practices at issue here as the Maryland Class members;

    d.     Was governed by the same timekeeping policies, practices and systems as the Maryland Class members;

    e.     Was governed by the same compensation policies, practices and systems as the Maryland Class members;

    f.     Was governed by the same policies, practices and systems concerning work hours and the performance of their work as the Maryland Class members; and

g.      Was governed by the same policies, practices and systems concerning overtime hours and wages as the Maryland Class members.

## Numerosity

38.     Plaintiff's claims for violations of the MWHL and MWPCL may be maintained as a class action because the putative class members are so numerous that their joinder would be impracticable.  Over the relevant period, Defendants employed in excess of 50 Clinicians in Maryland.  The exact number of class members will be determined from Defendants' payroll records through the discovery process. Maryland Class members may be informed of the pendency of this action by direct mail, workplace posting, electronic mail, text message, and/or published and broadcast notice.

## Common Questions of Fact or Law

39.     There are questions of fact and law common to each Maryland Class member which predominate over questions affecting only individual members, if any exist. Plaintiff, the members of the Maryland Class, and Defendants have a commonality of interest in the subject matter and the remedy sought.

40.     If individual actions were required to be brought by each member of the Maryland Class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Court, the Maryland Class, and to the Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which each Maryland Class member is entitled.

**Typicality**

41.     Plaintiff's claims are typical of the claims of each Maryland Class member.  As a result of Defendants' unlawful conduct, Plaintiff suffered similar injuries as those suffered by other members of the Maryland Class she seeks to represent.

**Adequacy**

42.     Plaintiff is an adequate representative of the Maryland Class she seeks to represent because she is a member of the Maryland Class, and her interests do not conflict with the interests of the other members of the Maryland Class. The interests of each Maryland Class member will be fairly and adequately protected by Plaintiff and her undersigned counsel. Plaintiff has hired competent attorneys who are experienced in class action litigation of this type and who are committed to the prosecution of this Action.

**Superiority**

43.     A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable.  Class action treatment will allow a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually.

44.     Moreover, as the damages suffered by each Maryland Class member may be relatively small, the expenses and burden of individual litigation would make it difficult for each Maryland Class member to bring individual claims.

45.     The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for

Defendants and/or substantially impair or impede the ability of each Maryland Class member to protect their interests.

## COUNT I
## FAIR LABOR STANDARDS ACT SECTION 207
## DEFENDANTS' FAILURE TO PAY EARNED OVERTIME

46.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

47.     Each Defendant is an "Employer" as defined by 29 U.S.C. § 203(d).

48.     The wages Defendants paid to Plaintiff and the members of the FLSA Collective are "Wages" as defined by 29 U.S.C. § 203(m).

49.     Defendants constitute an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

50.     Plaintiff and the members of the FLSA Collective are "Employees" as defined by 29 U.S.C. § 203(e)(1).

51.     Plaintiff and the members of the FLSA Collective are similarly-situated individuals within the meaning of 29 U.S.C. § 216(b).

52.     29 U.S.C. § 207(a)(1) provides that, with certain exceptions not applicable here, non-exempt employees must be paid an overtime premium rate, equal to 1½ times their regular rate of pay, for all hours worked in excess of 40 hours per week.

53.     29 U.S.C. § 211(c) expressly requires employers to maintain accurate time records of the work their employees perform.

54.     29 U.S.C. § 216(b) expressly allows private plaintiffs to bring collective actions to enforce an employer's failure to comply with its requirements.

55.     Throughout the relevant period, Defendants were obligated to comply with the FLSA's requirements, Plaintiff and the members of the FLSA Collective were covered employees entitled to the FLSA's protections, and Plaintiff and the members of the FLSA Collective were not exempt from receiving wages required by the FLSA for any reason.

56.     Defendants violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions by knowingly classifying Plaintiff and the members of the FLSA Collective as exempt from the FLSA's overtime pay provision despite knowing that their invalid quasi-salary-based wage scheme does not meet either the salary-basis requirement or the fee-basis requirement of the FLSA.

57.     Defendants willfully violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions by knowingly suffering or permitting Plaintiff and the members of the FLSA Collective to regularly work more than 40 hours per week without ensuring they were paid at an overtime premium rate for all hours beyond 40.

58.     Defendants willfully violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions by knowingly failing to pay Plaintiff and the members of the FLSA Collective any wages for a wide array of work-related tasks they were required to regularly perform, including: bi-weekly meetings, quarterly "in-service" trainings, preparing for patient visits, communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with other providers; travelling between patients' homes; documenting information from patient visits ("charting"); and ordering, organizing, or retrieving equipment and supplies to be used during their home visits.

59.     Defendants willfully violated the FLSA and acted with reckless disregard of clearly applicable FLSA provisions by knowingly failing to create or maintain accurate records of the time Plaintiff and the members of the FLSA Collective worked.

60.     Plaintiff and the members of the FLSA Collective have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of overtime wages owed for work they performed from which Defendants derived a direct and substantial benefit.

61.     Defendants have no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff and the members of the FLSA Collective all wages mandated by the FLSA.

## COUNT II
## MARYLAND WAGE AND HOUR LAW
## DEFENDANTS' FAILURE TO PAY MINIMUM AND OVERTIME WAGES
## UNDER MARYLAND LAW

62.     Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

63.     Plaintiff and other similarly situated home health Clinicians that currently work or worked for Defendants in Maryland during the applicable statute of limitations period (the "Maryland Class") meet the requirements for certification and maintenance of a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

64.     The unpaid wages at issue in this litigation are "Wages" as defined by MWHL § 3-401(d).

65.     Each Defendant is an "Employer" as defined in MWHL § 3-401(b).

66.    MWHL § 3-413 requires an employer to pay its employees the State minimum wage rate[3] or the federal minimum wage rate, whichever is greater, for all hours worked.

67.    MWHL § 3-415 states that employees shall be paid for all hours worked in excess of 40 hours per week at a rate not less than 1½ times their regular rate of pay.

68.    MWHL § 3-420 states that employees shall be paid for all hours worked in excess of 60 hours per week at a rate not less than 1½ times their regular rate of pay even if they are otherwise exempt from the overtime provisions of the FLSA.

69.    MWHL § 3-424 requires employers to keep a true and accurate record of the hours worked by each employee.

70.    MWHL § 3-427(a) expressly allows private plaintiffs to bring a civil action to enforce an employer's failure to comply with the MWHL's requirements.

71.    MWHL § 3-427(c) expressly provides that an agreement between the employer and employee to work for less than the required minimum wage is not a defense to an action seeking to recover unpaid minimum wages.

72.    Throughout the relevant period, Defendants were obligated to comply with the MWHL's requirements, Plaintiff and the Maryland Class members were covered employees entitled to the MWHL's protections, and Plaintiff and the Maryland Class members were not exempt from receiving wages required by the MWHL for any reason.

---

[3]    The Maryland minimum wage rate is: (1) for the 6-month period beginning January 1, 2015, $8.00 per hour; (2) for the 12-month period beginning July 1, 2015, $8.25 per hour; (3) for the 12-month period beginning July 1, 2016, $8.75 per hour; (4) for the 12-month period beginning July 1, 2017, $9.25 per hour; and (5) beginning July 1, 2018, $10.10 per hour. MWHL § 3-413. In Montgomery County, Maryland, the minimum wage rate is: (1) for the 12-month period beginning July 1, 2017, $11.50 per hour; and (2) beginning July 1, 2018, $12.00 per hour (if 50 or less employees) and $12.25 per hour (if 51 or more employees). Montgomery County Code, ch. 27, art. XI. In Prince George's County, Maryland, the minimum wage rate is: (1) for the 12-month period beginning October 1, 2016, $10.75 per hour; and (2) beginning October 1, 2017, $11.50 per hour. Prince George's County Code, Labor Code, subtit. 13A.

73.     Defendants violated the MWHL and acted with reckless disregard of clearly applicable MWHL provisions by knowingly classifying Plaintiff and the Maryland Class members as exempt from the MWHL's overtime pay provision despite knowing that their invalid quasi-salary-based wage scheme does not meet either the salary-basis requirement or the fee-basis requirement of the FLSA or MWHL. *See Williams v. Genex Svcs., LLC*, 809 F.3d 103, 105 n.2 (D. Md. 2015) (noting that the requirements for the professional exemption under the MWHL "has the meaning stated in [the FLSA].") (citing Md. Code Regs. 09.12.41.17).

74.     Defendants willfully violated the MWHL and acted with reckless disregard of clearly applicable MWHL provisions by knowingly suffering or permitting Plaintiff and the Maryland Class members to regularly work more than 40 hours per week without ensuring that they were paid at an overtime premium rate for all hours beyond 40.

75.     Defendants willfully violated the MWHL and acted with reckless disregard of clearly applicable MWHL provisions by knowingly failing to pay Plaintiff and the Maryland Class members any wages for a wide array of work-related tasks they were required to regularly perform, including: bi-weekly meetings, quarterly in-service trainings, preparing for patient visits; communicating with patients, physicians and case managers about scheduling, patient-care and logistical matters; coordinating patient care with other providers; travelling between patients' homes; documenting information from patient visits ("charting"); and ordering, organizing, or retrieving equipment and supplies to be used during their home visits.

76.     Defendants willfully violated the MWHL and acted with reckless disregard of clearly applicable MWHL provisions by knowingly failing to create or maintain accurate records of the time Plaintiff and the Maryland Class members worked.

77.    Plaintiff and the Maryland Class members have been harmed as a direct and proximate result of the unlawful conduct described here, because they have been deprived of wages owed for work they performed from which Defendants derived a direct and substantial benefit.

78.    Defendants have no good faith justification or defense for the conduct detailed above, or for failing to pay Plaintiff and the Maryland Class members all wages mandated by the MWHL.

79.    As a result of Defendants' violations of the MWHL, Plaintiff and other members of the Maryland Class have suffered harm and are entitled to recoup their unpaid wages and other losses in an amount to be determined at trial, along with liquidated damages, interest and reasonable attorneys' fees and costs.

**COUNT III**
**MARYLAND WAGE PAYMENT AND COLLECTION ACT**
**DEFENDANTS' FAILURE TO PAY ALL WAGES DUE**
**UNDER MARYLAND LAW**

80.    Each of the preceding paragraphs is incorporated by reference as though fully set forth herein.

81.    The unpaid wages at issue in this litigation are "Wages" as defined by MWPCL § 3-501(c).

82.    Each Defendant is an "Employer" as defined in MWPCL §§ 3-501 and 3-502.

83.    MWPCL § 3-501 requires an employer to pay all wages due to an employee for employment, including overtime pay. *See Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 653 (Md. 2014) ("[B]oth the [M]WHL and the [M]WPCL are vehicles for recovering overtime wages.").

84.    As Plaintiff's employer, Defendants were obligated to pay Plaintiff all wages due to her for the work that she performed, including overtime wages.

85.    As provided above, Defendants failed to compensate Plaintiff and the Maryland Class for all wages due, including overtime wages, which Plaintiff and the Maryland Class were legally owed.

86.    Defendants' failure to pay Plaintiff and the Maryland Class all wages due, including overtime wages, violates the MWPCL.

87.    Defendants' failure to pay Plaintiff and the Maryland Class all wages due was not the result of any *bona fide* dispute.

88.    As a result of Defendants' violations of the MWPCL, Plaintiff and the Maryland Class have suffered harm and are entitled to recoup their unpaid wages, in an amount not exceeding 3 times their wages, along with reasonable counsel fees and other costs. MWPCL § 3-507.2.

<b><u>PRAYER FOR RELIEF</u></b>

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, by and through her attorneys, demands judgment against Defendants, and each of them, jointly and severally, and in favor of Plaintiff and all others similarly situated, for a sum that will properly, adequately, and completely compensate Plaintiff and all others similarly situated for the nature, extent, and duration of their damages, the costs of this action, and as follows:

A.    authorize this matter to proceed as a collective action with respect to Count I;

B.    authorize this matter to proceed as a class action with respect to Counts II and III;

C.    appoint Stephan Zouras, LLP and Shavitz Law Group, P.A. to serve as Class and Collective Counsel;

D.    appoint Plaintiff as class representative of the Maryland Class;

E.    award judgment in favor of Plaintiff and against Defendants, and each of them, jointly and severally, for an amount equal to Plaintiff's and the members of the FLSA Collective's unpaid overtime compensation;

F.  award judgment in favor of Plaintiff and against Defendants, and each of them, jointly and severally, for an amount equal to Plaintiff's and the Maryland Class members' unpaid wages pursuant to the MWHL and MWPCL;

G.  declare that Defendants' violations of the FLSA, MWHL, and MWPCL were willful;

H.  award Plaintiff and members of the FLSA Collective's liquidated damages in accordance with the FLSA;

I.  award Plaintiff and members of the Maryland Class liquidated damages in accordance with the MWHL;

J.  award Plaintiff and members of the Maryland Class treble damages in accordance with the MWPCL;

K.  certify this action as a class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure with respect to Counts II and III and certify the Maryland Class set forth above;

L.  declare and find that Defendants willfully violated all applicable record keeping statutes;

M.  award Plaintiff reasonable attorneys' fees and all costs of the collective action, to be paid by Defendants, in accordance with the FLSA;

N.  award Plaintiff reasonable attorneys' fees and all costs of the Maryland Class action, to be paid by Defendants, in accordance with the MWHL and MWPCL;

O.  award pre- and post-judgment interest and court costs as further allowed by law;

P.  award a reasonable service award for Plaintiff to compensate her for the time and effort spent protecting the interests of other Clinicians, and the risks she has undertaken;

Q.  grant Plaintiff and the Maryland Class leave to add additional plaintiffs by motion, the filing of written consent forms, or any other method approved by the Court;

R.  provide additional general and equitable relief to which Plaintiff and the Maryland Class may be entitled; and,

S.  provide further relief as the Court deems just and equitable.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated: January 3, 2019                    Respectfully Submitted,

/s/ Michael Palitz
Michael Palitz
**SHAVITZ LAW GROUP, P.A.**
830 3rd Avenue, 5th Floor
New York, NY 10022
800-616-4000
561-447-8831 *f*

Gregg I. Shavitz (*pro hac* forthcoming)
Alan Quiles (*pro hac* forthcoming)
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Phone: 561.447.8888
Fax: 561.447.8831
Email: gshavitz@shavitzlaw.com
Email: aquiles@shavitzlaw.com

James B. Zouras (*pro hac* forthcoming)
Ryan F. Stephan (*pro hac* forthcoming)
Teresa M. Becvar (*pro hac* forthcoming)
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312-233-1550
312-233-1560 *f*

*Attorneys for Plaintiff*

# EXHIBIT A

# CONSENT TO BECOME PARTY PLAINTIFF

### *Cucinotta v. Personal-Touch Home Care*

Complete and Mail, Fax or Email to:

**ATTN: PERSONAL-TOUCH HOME CARE UNPAID WAGE ACTION**
**Stephan Zouras, LLP**
**100 N. Riverside Plaza, Suite 2150**
**Chicago, IL 60606**
**Fax to: (312) 233-1560**
**Email to: lawyers@stephanzouras.com**

By signing below, I state that I have been employed by Personal Touch Home Care Inc. and/or one of their subsidiaries and/or affiliates ("Personal Touch" or "Defendants") within the past three (3) years and that I hereby consent to join this action seeking unpaid wages and overtime based on Personal Touch's violations of the Fair Labor Standards Act, 29 U.S.C. Sec. 201 *et. seq.*

I hereby designate the law firms of Stephan Zouras, LLP represent me for all purposes of this action.

I also designate the Class Representative as my agent to make decisions on my behalf concerning this action, the method and manner of conducting this action, the entering of an agreement with Class counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

12/13/2018
_____
Date

DocuSigned by:
*Cucinotta*
C819DED02C5B49B...
_____
Signature

Cris Cucinotta
_____
Print Name

**\*Statute of limitations concerns mandate that you return**
**this form as soon as possible to preserve your rights.**